STATE v. F. A. McNINCH and another.

*Assault—Judge's Charge—Arrest by officer—Towns and Cities.*

A police officer, in arresting one for violating a city ordinance, was indicted for an assault. The prosecutor alleged that the force used was excessive, and the judge charged the jury if such was the case the defendant was

guilty, but failed to call their attention to the good faith in which the officer claims to have acted; *Held,* error. The amount of force necessary to make the arrest is left to the judgment of the officer when acting within the scope of his general powers and actuated by no ill-will or malice.

(*Neal* v. *Joyner,* 89 N. C., 287; *State* v. *Stalcup,* 2 Ired., 50; *State* v. *Pendergrass,* 2 Dev. & Bat., 365; *Furr* v. *Moss,* 7 Jones, 525, cited and approved).

INDICTMENT for an assault tried at Spring Term, 1883, of MECKLENBURG Superior Court, before *MacRae, J.*

The defendants McNinch and Healy, police officers of the city of Charlotte, are charged with assaulting the prosecutor, Robert C. Mason.

The prosecutor testified that while he was in the back yard in rear of Snider's bar-room, the defendant Healy came up and took him by the arm and told witness to go with him, and witness refused, and asked for his authority. Healy then jerked him and carried him into the bar-room, and struck at him with a stick, and also struck him under the eye with his fist. Witness was then taken to the guard-house. The defendant McNinch was present. Witness again resisted, when Healy put him in the guard-house and jerked him down on the floor, and locked him up. He was kept in confinement a half hour or more, and then released on bail for his appearance before the mayor of the city. Witness further testified that he was not drunk, was making no noise, and was not in any manner exposing his person; but that he was sick and went in the yard because it was not so warm there as in the house; and that McNinch came out into the yard about the time Healy struck him. He does not think he told the officers he was sick.

There was also evidence to the effect that defendants were pulling Mason and trying to get him along, and that he was advised to go with the officers; that Mason was not drunk; his nose was bleeding.

The city ordinance against drunkenness was put in evidence, and Healy testified that having received an order from McNinch (his superior officer) he went to the back-yard and found the

prosecutor there apparently drunk and asleep; that the prosecutor after he was roused up caught the witness by the throat and choked him, and the witness struck him a blow on the nose; did not strike or offer to strike with the stick he had at the time. The prosecutor was then taken to the guard-house, and upon his resisting, the witness pushed him in the guard-house, but did not jerk him upon the floor. Another witness testified that the prosecutor was cursing and making a considerable noise in the yard, and McNinch stated that in consequence of this he directed Healy to go and arrest him.

There was also testimony tending to show that Mason was indecent by exposing his person, and that on one side of the yard was a hotel and on the other a boarding-house—some of the windows of each overlooking the yard.

Several special instructions were asked by defendants, but they are not necessary to an understanding of the point decided. The opinion here sets out that portion of the judge's charge of which the defendants complain.

Verdict of guilty; judgment; appeal by defendants.

*Attorney-General*, for the State.
*Messrs. Burwell & Walker*, for defendants.

SMITH, C. J. The defendants are charged with assaulting and beating the person of one Robert C. Mason, and for arresting and maltreating him while in their custody. The defendants, in support of their plea of not guilty, sought to justify, as peace officers of the city of Charlotte, the arrest and detention of the prosecutor, upon the ground that he was found in a state of intoxication and behaving in a boisterous and disorderly manner, in violation of a city ordinance they were required to enforce, and no excessive or unreasonable force was used to overcome his resistance and convey him to the guard-house for a temporary confinement.

The evidence as to the condition of Mason, and his behavior and the manner in which the defendants exercised their power,

was somewhat conflicting, and needs not to be repeated to present, their exceptions, which their appeal from the judgment following correction brings up for review. The charge of the court, in response to the prayer for instructions asked and refused, and of which complaint is made, is in these words:

"Should you be satisfied from the testimony that Mason was drunk, or using loud and profane language, or indecently exposing his person in the place described, then you must enquire whether the defendant Healy struck him a blow that was unnecessary to enable Healy to complete the arrest. If he did, he is guilty of assault and battery; but McNinch would not be guilty of this assault and battery unless he was present aiding and abetting—that is, ordering, counseling or encouraging him."

" And you must further enquire whether more force than was necessary was used by Healy and McNinch, or either of them, in presence of the other at the guard-house, for if there was more than was necessary for his confinement used at the guard-house, and both were present aiding in the use of such force, or the one encouraging the other in the use, they would both be guilty of assault and battery."

The exception to the charge is that it transfers the honest exercise of the judgment of the accused, as to the degree of force required to overcome resistance and the means appropriate and adequate to secure submission, under the attending circumstances, to the cooler judgment of the jurors taking a retrospective view of the occurrence. It moreover ignores the question of the good faith in which the accused aver they acted in enforcing the ordinance and preserving public order and quiet.

This is, to say the least, a harsh measure of responsibility to hold officers to, when engaged in the public service and acting without malice or improper motive. It may be that less force would have sufficed; but should the misjudgment of the officers, while engaged in subduing opposing force, expose them to a rigid accountability, as criminals, because of the excess now seen to have been used, while nothing was done beyond the use-

of such means as are ordinarily employed in such cases and which evince no malicious feeling or purpose?

While the individual citizen is protected by law against every invasion of personal security, he is equally interested in the maintenance of public order and the repression of crime for which the public agencies are formed and entrusted necessarily with large discretionary authority.

In making an arrest upon personal observation and without warrant, the officer will be excused when no offence has been perpetrated, if the circumstances are such as reasonably warrant the belief that it was (*Neal* v. *Joyner*, 89 N. C., 287), and the jury must judge of the reasonableness of the grounds upon which the officer acted.

On the other hand, the amount of force and the employment of the usual means in making the arrest and detention, when within the compass of the means ordinarily resorted to for securing one found committing a criminal act, must be left to the discretion and judgment of the officer, when, actuated by no ill-will or malevolent impulse, he is engaged in discharging a public and official duty.

In the words of GASTON, J., commenting on an instruction which directed the jury to determine "whether a man of ordinary prudence would not have deemed it necessary and proper to secure the prisoner by tying him," for doing which the accused constable then on trial had been indicted for an abuse of authority: "The act of tying is therefore within the limits of the officer's authority and of the propriety and necessity of adopting this mode of securing the prisoner; *the officer is the judge, and the jury cannot supervise the correctness of his judgment.* State v. *Stalcup*, 2 Ired., 50.

So where a teacher was charged with inflicting an excessive whipping upon a pupil, the same learned judge said: "Within the sphere of authority, the master is the judge when correction is necessary and of the degree of correction necessary: and like all others entrusted with a discretion, he cannot be made penally responsib'e for error of judgment, but only for wickedness of pur-

pose." * * * But the master may be punishable when he does not transcend the powers granted, if he grossly abuse them. If he use his authority as a cover for malice, and, under pretence of administering correction, gratify his own bad passions, the mask of the judge shall be taken off, and he will stand amenable to justice as an individual not invested with judicial power." *State* v. *Pendergrass,* 2 Dev. & Bat., 365.

The rule laid down in *State* v. *Stalcup, supra,* is reasserted in *Furr* v. *Moss,* 7 Jones, 525, wherein MANLY, J., after declaring that a justice of the peace acting in his judicial capacity is not exposed to an action for a judgment however erroneous or malicious, proceeds: "It is not so, however, with regard to such acts as are not judicial but merely ministerial. With respect to the latter, if the officer transcend his powers maliciously (*mala fide*), he will be amenable to the person injured."

When this case was before us on a former appeal (87 N. C., 567) the exception passed on did not present the question of an excess of police power, but whether the arrested party was acting in violation of the law at the time.

While then the jury must say whether the defendants had reasonable grounds to warrant the arrest, and the charge in this respect is not obnoxious to criticism, there is error in an instruction which makes the criminal act depend, not upon an honest exercise of the judgment of the defendants as to the degree of force necessary to be exerted, under the restraints mentioned, but upon the conclusion of the jury, in a review of the facts, that the force was needless and the same result would have been obtained by the use of less. There must be a *venire de novo* and it is so ordered. This will be certified.

  Error.                                          *Venire de novo.*